Good morning, Your Honors. May it please the Court, Lauren Stewart on behalf of the appellant Riley Piper. I would like to reserve three minutes for rebuttal today. That will be fine, but you'll need to pay attention to the clock and we won't interrupt your arguments, so just guard your own time. Thank you, Your Honor. I'll focus my argument today on Claim 1, the res judicata issue. I don't intend to separately address every claim before the Court, though I will do my best to answer the Court's questions. The key issue before the Court is the independence and adequacy of South Dakota's res judicata rule as it was applied to Mr. Piper's challenge to the constitutionality of his guilty plea. Even if the Court were to presume that res judicata in South Dakota was firmly established and consistently applied, it was not, as I will explain. But the first question is whether it was clear and obvious that res judicata would apply to the circumstances of this case. The Court's decision written by Judge Richard Arnold in White v. Bowersox is instructive to the case before the Court today. In White, under Missouri law, petitioners were required to verify post-conviction motions, and because of time pressures, White didn't complete a valid verification with his attorney and instead signed a blank verification form. And the Missouri Supreme Court in that case ruled that any claim raised after signing a blank verification was waived. This Court on Federal Habeas Review ruled that it made a common-sense observation that it did not see how anyone could have known that signing a blank verification would waive claims before the decision in Mr. White's own case. And as such, this Court held that the state law procedural ruling on a novel issue was not adequate to bar Federal Habeas Corpus Review. So too here. The South Dakota res judicata statute, or excuse me, the South Dakota res judicata rule had not been applied to facts like the facts in this case. When Mr. Piper was appealing his conviction and death sentence in Piper I and Piper II, it was not foreseeable that he was at that time required to move to withdraw his guilty plea if he saw fit. In fact, all authority at the time was to the contrary. There was no case applying South Dakota's plea withdrawal statute, that's 23A-27-11. There was no case applying it to a formerly death-sentenced defendant who had received penalty phase relief. And in fact, the plea withdrawal statute was clear on its face. Under South Dakota law, in cases interpreting the statute, defendants are liberally permitted to withdraw their pleas if they have not yet been sentenced. There was no case law to the contrary. And consistent with those principles, Mr. Piper's extremely experienced appellate attorney in the Piper II case advised him that he would later have a quote, absolute right, unquote, to withdraw his guilty plea if he obtained sentencing relief. Mr. Piper did end up obtaining sentencing relief in the Piper II case. There was an intervening judgment. He was an unsentenced defendant and he moved to withdraw his guilty plea. The South Dakota courts, however, found that his attempt to withdraw the guilty plea was barred by res judicata and did not rule on the merits of the claim. But under these circumstances, where the plea withdrawal statute and the case law was clear, it was not clear and obvious that res judicata would apply to Mr. Piper's attempt to withdraw his guilty plea. That's also consistent with this court's ruling in Ashby v. Wyrick, a case that held that where the state procedural rules are quote, at least arguably confusing, end quote, federal habeas corpus review is not barred. At the time of Mr. Piper's attempt to withdraw his guilty plea and at the time of Piper II, it was at least arguably confusing that the statute would be barred by, that his attempt would be barred by res judicata. White v. Bowerstocks also teaches us that res judicata does not bar federal review if res judicata is not consistently applied. I'd like to address four cases on that point. The first is Mr. Piper's case itself. In Piper II, Mr. Piper obtains sentencing relief on the claim that his guilty plea was not, I'm sorry, that he did not knowingly and voluntarily waive his right to a jury determination at the penalty phase. If res judicata had been consistently applied in Piper II, that claim would have been barred. It was a claim that was based on the record. It was a claim that did not allege ineffective assistance of counsel. It absolutely could have been raised on direct appeal. Under South Dakota's res judicata rule, the second portion of the rule, the claim preclusion portion, that would have been barred by res judicata, yet the South Dakota Supreme Court did not apply it. If Mr. Piper was not barred by res judicata in Piper II, it would not have been clear to him and his counsel that res judicata would have barred him in Piper IV. Another case from the South Dakota Supreme Court that carved out exceptions to res judicata was Hoss v. Weber. In that case, as your honors may have seen from our briefs, the defendant raised three separate post-conviction motions, three separate state habeas petitions. In the second, it was rejected as time barred. In the third petition, he alleged that his counsel in the second petition had been ineffective for failing to file a timely notice of appeal. Plainly, this could have been subject to the res judicata rule and would have been, but the court declined to apply res judicata and addressed it squarely. The court remarked that this presented a unique and troubling situation in Hoss. The court remarked that it would unlikely ever to be reviewed on the merits. Importantly, the court mentioned that it would also bar federal habeas corpus consideration of Hoss' claim, as we have in this case today. At 670 in the court's opinion, it indicated that, quote, the strict application of the doctrine of res judicata may be relaxed, however, where fundamental fairness requires, end quote. The third case of four that shows that res judicata is not consistently applied in South Dakota is another capital case, Rines v. Weber. In Rines, after remand from the United States Supreme Court, Mr. Rines raised two penalty phase claims in his subsequent state post-conviction proceeding. One related to what was coined a tepid mitigation presentation at the penalty phase by trial counsel, and the second was an ineffectiveness claim relating to the failure to hire a mitigation specialist. The court applied res judicata to the tepid mitigation claim. It found that that claim had been previously litigated. This is the issue preclusion aspect of res judicata. That claim was barred by res judicata. The mitigation specialist claimed that plainly could have been raised earlier was not barred. Even within one capital case, the South Dakota courts did not apply res judicata consistently. Then a fourth case, this is the fourth and final of the uneven application of res judicata in the South Dakota courts, is the case of People x Rel L S. Each of these cases is cited in our brief, of course. x Rel L S was an abuse neglect petition case to terminate parental rights. There were two proceedings in the case. In the first proceeding, the proceeding was terminated in the mother's favor. That is to say, her parental rights were not terminated. But the state brought a second proceeding to terminate rights in a different county. The mother asserted res judicata. All of the facts that were alleged in the second petition had been known to the judge in the first petition at the time of dismissal, and it appeared that res judicata would apply. But again, the South Dakota Supreme Court said it does not. The court held, quote, because the doctrine bars any subsequent litigation, it should not be used to defeat the ends of justice. Instead, courts must give careful consideration to the case at hand before erecting the doctrines preclusive bar. It also noted that this was not on a whim. The court indicated, quote, longstanding jurisprudence recognizes that special concerns may warrant exceptions to claim preclusion. And it held that res judicata was not appropriate in extraordinary circumstances such as these. Now, my opponent will no doubt say that consistent does not mean always. My opponent may cite res judicata cases where... Counsel, let me ask you about that. So your strongest case, I think, is the Haas case. But the U.S. Supreme Court in Johnson v. Lee said that it takes more than a few outliers to show inadequacy. And the Supreme Court has also referred to res judicata as well-established and ubiquitous. So can one or even three cases meet that standard? That's a good question, Your Honor. The response to that is that in this case, it is particularly inappropriate to apply res judicata because res judicata was not applied in this case in Piper II. So the other thing I would respond, Your Honor, is that since the death penalty was reinstated in 1976, South Dakota has had approximately a handful of death sentences. In the cases we've just discussed, Piper and Rhines, that's two capital cases of that handful where the South Dakota Supreme Court has not applied res judicata consistently. So I guess my... Is the rule limited to capital cases? It's not, Your Honor. And the cases that we just discussed, of course, were in many different types of case. However, what matters is whether the application of the bar is clear and obvious at the time that the claim is defaulted. And in these circumstances, it was not clear and obvious. A state procedural rule does not bar federal review also if the claim is not... If the bar is not independent of federal law. In Piper IV, as in other cases applying res judicata, the court considered fundamental fairness to arrive at its decision. It considered whether... It considered the factual and legal aspects of the claim and the relative strengths of the claim and various claims, in fact, to arrive at its decision that res judicata applied. That is not independent of federal law. As is well established under Michigan v. Long and Harris v. Reed, if a state procedural ruling is interwoven with federal law, that state procedural bar is not independent. And if the independence of the ruling is not clear from the face of the opinion, this is under Michigan v. Long, a plain statement of the state basis for the ruling is required. And absent that, the state procedural bar does not bar federal review. In the Piper IV decision, the South Dakota Supreme Court considered Mr. Piper's claim that his guilty plea was not knowing and intelligent or voluntary and intelligent. It hearkened back to the Piper I decision where Mr. Piper had challenged the constitutionality, a facial challenge to the constitutionality of the South Dakota death penalty statute. Mr. Piper alleged in Piper I that that violated Ring v. Arizona in that there was no jury determination of aggravating circumstances or no right to it. The Piper IV court held that these were two of the same, that the claim in Piper IV was, quote, part and parcel of the claim raised in Piper I. That is an inherently federal determination. It's interwoven with federal law and furthermore, the Piper IV court considered the ineffectiveness of the Piper II appellate counsel. This was counsel who made a mistake of law when he indicated to, he advised Mr. Piper very strongly that Piper would have an absolute right to later withdraw his guilty plea. The other cases that we've already discussed today, Haas talks about fundamental fairness, LS talks about the ends of justice. Each of these have a federal due process like exception to the application of res judicata. That is, courts don't apply res judicata and it's very severe preclusive effect if fundamental fairness or the ends of justice would otherwise dictate. I'd like to just make a few points about Claim 3, excuse me. Yes, Claim 3 in our petition, in our appeal, excuse me. This is the constitutionality of AEDPA. The first point is just to be clear, Loper-Bright, of course, did not invalidate AEDPA, did not declare AEDPA unconstitutional. Loper-Bright was an Administrative Procedures Act case. But the reasoning in Loper-Bright has real consequences for AEDPA. So the issue that is the same, or not the same, but is similar in Loper-Bright, along with this challenge to AEDPA, is that the Article 3 courts are tasked with deciding federal constitutional questions. The APA is slightly different. But under AEDPA, it's Article 3 courts who have that jurisdiction. The delegation of a decision on federal constitutional law to a non-Article 3 actor violates the Constitution. The Chief Justice Roberts, in the Loper decision, acknowledged that Chevron had been around for a very long time, longer, in fact, than AEDPA. But Chief Justice Roberts emphatically declared that the court had gotten it wrong, citing Marbury v. Madison. I'll paraphrase, but he indicated that it is very much the court's obligation under Marbury to decide questions of constitutional law, of federal law, excuse me. What about general federalism principles? You know, I mean, let's just step back and look at what you're arguing here. You're arguing a position that essentially would say, I don't hear you to be arguing that the South Dakota courts are not competent, I mean, legally competent, not, you know, capable, but competent to make determinations of the United States constitutional law. And indeed, the state courts have decided questions of constitutional law since the beginning, the founding of the Republic, okay? So, what you're really saying is that in every single 2254 case that comes before the federal courts, that the United States District Court becomes the first court of appeals for the state courts. And you have this unseemly position of an Article III United States District Court, supervising the Supreme Court of a state, which under our, you know, principles of federalism has never happened. And, you know, just on the idea that, like, you know, novel positions require, you know, really extravagant proof, because if something has existed for 230 years, one generally assumes that it's because it's the right conclusion. And so, I really want to know how you think that we could have overlooked this elephant in the room for, you know, basically two centuries. So, I would disagree respectfully with the premise, because the issue has been around for 30 years, since the passage of the Antiterrorism and Effective Death Penalty Act. And the problem really, Justice, excuse me, Judge Erickson, is that under AEDPA, federal courts are required to defer to state court determinations on federal constitutional law that might be wrong, but not unreasonable. That is a rule of decision. And just briefly, I'll commend to the Court what was the subject of the party's, or my and the intervener's 28-J letters, the Sixth Circuit's decision two weeks ago in Sanders v. Plappert. The intervener cited it, and we'll discuss it, no doubt. But I would commend to the Court Judge Stranch's dissent in the Sanders v. Plappert case, particularly as to her treatment of the problematic rule of decision prescribed under AEDPA and United States v. Klein. If I may, Your Honor, reserve the remainder of my time for rebuttal. All right, you may. Thank you. Thank you. Mr. Swedlund. So I assume that United States will take five minutes? Yes, Your Honor. May it please the Court and counsel, Piper had two, not one, but two opportunities to challenge his guilty plea, first on direct appeal from his original conviction, and in his first state habeas corpus. He chose not to for strategic reasons, and that is how Piper's guilty plea challenge became barred by res judicata. Piper now claims that res judicata is not regularly applied or has been applied in a But it is not defense counsel's strategic assumptions or frustrated strategies that govern whether res judicata is regularly or consistently applied in South Dakota. That determination is governed by how the state courts have applied it. Piper originally cited only one case for the proposition that res judicata is not regularly applied, that's the Haas case. Would you agree that that case does lend some support to Piper's argument? No. According to Haas itself, that was an exception granted purely due to the unique facts of that case. And as you pointed out, Judge, an outlier, and it is an outlier, does not frustrate the fact that otherwise res judicata has been consistently applied in South Dakota. And we cite those cases in our brief and footnote for there's a couple dozen cases at least, and there's dozens more that aren't in that footnote. So one case among scores of cases does not create irregularity. And for the first time, Piper in his reply brief has cited a second case, this LS case, but LS again does not create a general fundamental fairness exception. LS states only that res judicata does not preclude using evidence from a prior abuse and neglect hearing and a subsequent abuse and neglect hearing for obvious reasons. We don't want res judicata to become a shield for child abuse. As the district court found, res judicata is regularly and consistently applied in South Dakota, including in the Rines case, where this court found that res judicata is an adequate and independent state law rule. This court found that sometime I think in 2017. And Piper cites no state decisions since Rines, as he's required to do, in order to call this court's finding into question. So this court's finding in Rines is in a sense controlling here because they cite nothing since Rines that has indicated that South Dakota's res judicata rule has become irregular in the time since Rines. Piper's reply brief also emphasizes the alleged novelty of the application of res judicata to his case. According to Piper, res judicata was applied in a novel way here because his counsel, we just heard him say it, it was not foreseeable how the resentencing statute would be applied should he be resentenced. But this line of reasoning stands the novel circumstance doctrine on its head. That doctrine requires that prior law be so clear that Piper's counsel justifiably relied on it. In other words, that the state court deviated from a very clear precedent. That's the linchpin of the novel circumstances doctrine. So when Piper is saying the law was unclear, his counsel cannot have justifiably based his strategic assumptions on unclear law so as to bring it within the novel circumstances doctrine. And here, there were no novel circumstances. The Piper IV court applied res judicata to the entirely un-novel circumstance of Piper foregoing two prior opportunities to challenge his plea in Piper I and Piper II. Piper's counsel's strategic calculations or frustrated strategies do not control here or make the circumstances novel. So given South Dakota's longstanding and consistent application of res judicata to bar claims that could have been raised in earlier stages of the proceedings, as is the case here, the district court properly found that it was an independent and adequate state law bar to Piper's withdrawal of his guilty plea. We have Mr. Lieberman here from the Department of Justice to talk about the Loper-Bright issue. I would just say that this case and Loper-Bright are apples and oranges because 2254 D1 deference is congressionally created, where Chevron deference was judicially created. Loper-Bright ruled that the judicially created deference of Chevron could not be squared with the APA. Loper-Bright did not rule that the congressionally created deference of the AEDBA cannot be squared with Article III. As Judge Erickson points out, Article III expressly empowers Congress to establish the scope of jurisdiction of federal and state courts. And in our federal structure, it's been a longstanding principle that state courts are competent arbiters of federal constitutional law. Congress limited the scope of federal review and state habeas corpus determinations essentially to respect state courts and limit federal review to glaring and inexcusable constitutional errors, which do not exist here. I have other remarks that I have prepared in relation to the other claims, but since the other side has not argued those claims, unless the court wishes me to proceed to talk about some of the other issues, I will surrender the remainder of my time. Thank you, Your Honors. Thank you. Good morning. May it please the Court, Dave Lieberman for the United States as Intervenor. Five circuits courts have held that AEDBA does not violate Article III, rejecting the very claim that is issued before this Court. Mr. Piper has given this Court no reason to chart a different course. I'll start with just two first principles points, and then I'll pivot to Loper-Bright. My first principles points are that AEDBA does not impair this Court's independent interpretive authority to determine the meaning of federal law in passing judgment on whether the South Dakota Court's resolution of these claims was contrary to or an unreasonable application of clearly established federal law. This Court does not need to defer to, anoint, or accept anything that those South Dakota courts said about the constitutional provision at issue. It is simply assessing that different question of reasonableness. It also does not mandate a particular result in this case. It simply sets the standard. It's a high standard that state prisoners must meet when obtaining the extraordinary remedy of a federal court vacating a state criminal judgment. This is a great place to pivot to Loper-Bright. As the State just mentioned, there are fundamental differences between the legal regime reviewed in Loper-Bright, the Administrative Procedures Act, and AEDBA. The problem that the Supreme Court discussed in Loper-Bright was that the APA, as interpreted by Chevron, required federal courts to accept the agency, federal agency's interpretation of federal law, and then apply the agency interpretation in the case before it as governing law. As I just mentioned, AEDBA does not do that. And I think the Sixth Circuit decision in Sanders hit this, or the majority hit this, right on the head. AEDBA does not mandate that federal courts accept a state court's federal constitutional interpretation as their own. It only prevents those federal courts from intervening when the state courts make reasonable decisions, as opposed to Chevron, which forced the court to defer to the agency decision. This also dovetails with a point that Judge Erickson made. And I thought of the, or I think of the Supreme Court's decision in Harrington v. Richter, where the court discussed the historic role of federal habeas corpus review of state court judgments. And there, the Supreme Court said, federal habeas corpus review 2254 is not a mechanism for ordinary error correction of state court judgments. AEDBA instead reflects the historic view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system. That quote has been repeated often by the Supreme Court, even after Loper-Bright. And I see nothing in this case that suggests that Loper-Bright somehow abrogated that principle that the Supreme Court has said so many times. It also represents the historic view, which we tried to chart out in our brief, that state prisoners have had a minimal, or in some points, no remedy in federal habeas review for much of this country's existence. And so that's important, because the Supreme Court has told us, notably in the Zatofsky case, that history matters when it comes to adjudicating these Article III disputes. There's nothing, as far as the United States has found, in Article III that mandates de novo review by this Court of Mr. Piper's constitutional claims. Two last points. Opposing counsel has commended this Judge Strange's dissenting decision in Sanders, which grounds quite a bit in the Kline decision. I think that perspective doesn't really grapple with the Supreme Court's most recent exposition of Kline in Benk-Marcazzi. There, the Supreme Court looks back at Kline, calls it a, quote, deeply puzzling decision, and makes clear that Congress may direct courts to apply new, outgoing, and altering legislation in pending cases. The district court then applies the new standard to the facts. That is exactly what AEDPA does on federal habeas review. Before I sit down, I'll just make a sort of a broader plea. This issue is popping up all over the country. I think we've had four or five certified questions from district courts in this circuit alone. So the United States would certainly welcome circuit guidance from this court, one way or another, to provide guidance to litigants and district courts on this issue going forward. Unless the court has any further questions, the United States asks that this court affirm the AEDPA's constitutionality. Thank you. Thank you, counsel. You may proceed. Thank you. Your Honor, my opponent talked about the strategic reasons that underlay the guilty plea originally. That misses the mark on two points. First, the guilty plea was based on a misunderstanding of the law, the misadvice that Mr. Piper's counsel gave him at the time of the guilty plea. Second, the district court didn't rule on the merits of the guilty plea claim. This is only before the court on the res judicata question, the independence and adequacy. My opponent talked about the Rines case as controlling and talked about the sequence of when cases were decided. To be clear, Rines did not simply say that the res judicata bar was independent and adequate. It held that res judicata did not apply to one of the claims that could and should have been barred, as the South Dakota Supreme Court also did. Second, the point about the independence and adequacy is about the application to this case. My point is not that this court should issue a ruling that declares res judicata in all cases to be improper. It's in the facts of this case. This was a novel situation. At the time of Piper IV, no court had ever ruled on the attempt to withdraw a guilty plea by a formerly death sentence defendant who obtained sentencing relief. The South Dakota law on the matter of withdrawing a guilty plea is very clear. Under state v. Engelman, it's cited in our brief, a defendant must have more than a mere wish to have a trial, but the grant of a motion to withdraw a guilty plea should be liberally granted. The defendant must only have a tenable reason. Those are all words of the South Dakota Supreme Court that hadn't been ruled on previously. Finally, as to the Loper-Bright issue, it's difficult to square Chief Justice Marshall's declaration in Marbury v. Madison that it is emphatically the province and duty of the with subsequent cases including Harrington v. Richter and Johnson v. William, where Justice Scalia indicated that a state court could be flat out wrong in its interpretation of federal law, but that would not matter. I see my time is up. Unless the court has any questions, I would ask that the court reverse and remand to the district court.